**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IVY WEINGARDT and QUEENIE COSTAS,<br><br>Plaintiffs,<br><br>v.<br><br>PROVISO AREA FOR EXCEPTIONAL CHILDREN PAEC 803, and MICHAEL JAMES, in his Official Capacity,<br><br>Defendants. | No. 25 CV 12441<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Ivy Weingardt and Queenie Costas sued their employer Proviso Area for Exceptional Children PAEC 803 and Superintendent Michael James for discrimination and retaliation on the basis of race and religion. Costas also alleged that defendants discriminated against her based on her alleged disability. Defendants move to dismiss plaintiffs' race discrimination claims. They also move to dismiss James as a defendant. For the reasons discussed below, the motion is granted in part and denied in part.

## I. Legal Standards

A complaint requires only "a short and plain statement" showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff must allege facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Id.*

At this stage, I accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Id.*

## II. Facts

Plaintiffs Ivy Weingardt and Queenie Costas were hired as teachers at defendant Proviso Area for Exceptional Children PAEC 803. [13] ¶¶ 13–14.[1] Both plaintiffs are Jewish. [13] ¶¶ 1–2, 86. They allege that the Proviso principal, their supervisor, exhibited antisemitic behavior toward Jewish employees and treated Jewish employees worse than non-Jewish employees. [13] ¶ 15. They also allege that defendant Superintendent Michael James treated Jewish employees worse than non-Jewish employees. [13] ¶ 16.

Weingardt alleges that she received antisemitic hate mail from Proviso employees, including statements like, "Because you are a Jew, you can't celebrate Christmas," and calling her a "loser." [13] ¶ 24. She says that Proviso failed to investigate these statements. [13] ¶ 25. Weingardt says the principal refused to allow her to go to her car despite allowing non-Jewish employees to do so, assigned her additional work without compensation, and assigned tasks that caused Weingardt to be late to "door duty," and then "yelled at and criticized Weingardt for being late." [13] ¶¶ 26–30. Weingardt says that in other respects, the principal treated Weingardt

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed on the top of filings. The facts are taken from plaintiffs' amended complaint, [13].

more harshly than non-Jewish employees. [13] ¶¶ 29, 31–34. The principal also told the school's vice principal that she "hate[d] Ivy Weingardt and her kind." [13] ¶ 35.

Costas says that when she was first hired, the principal did not know that she was Jewish, and treated Costas "professionally and respectfully." [13] ¶ 39. Costas alleges that after learning that she was Jewish, the principal's treatment abruptly changed. [13] ¶ 40. Costas says that the principal began berating her in front of other employees, refused to provide support in her classroom, and singled her out for "nitpicking and close monitoring." [13] ¶¶ 41, 44, 46–47, 65. Like Weingardt, Costas alleges that she was reprimanded for actions that non-Jewish employees routinely did without issue. [13] ¶¶ 49–51, 54. Costas also alleges that she was moved to "one of the most difficult classrooms" at the school as a means of harming her. [13] ¶ 63. Proviso transferred students with severe behavioral issues into her classroom and the principal then refused to provide sufficient staffing for the classroom. [13] ¶¶ 59–60, 62–64, 67. Costas says that although non-Jewish teachers were able to receive required training, Proviso delayed her training for a year, placing her at risk in her classroom. [13] ¶ 71. Weingardt says that she, too, had required training delayed by Proviso. [13] ¶ 72.

Plaintiffs allege that their race is Jewish. [13] ¶ 144. They allege that they were "subjected to intentional discrimination based on their race." [13] ¶ 149.

## III. Analysis

### A. Failure to State a Claim

Defendants argue that plaintiffs' 42 U.S.C. § 1981 claims should be dismissed because their assertions that the alleged events were "[b]ased on" their Jewish race

are conclusory and unsupported by adequate factual allegations. They say that instead, the allegations show that their discrimination is based on their Jewish religious beliefs.

A complaint does not need to plead a prima facie case of discrimination. *Thomas v. JBS Green Bay, Inc.*, 120 F.4th 1335, 1338 (7th Cir. 2024). A plaintiff must "plead "*claims* rather than facts corresponding to the elements of a legal theory." *Id.* at 1337 (quoting *Chapman v. Yellow Cab Cooperative*, 875 F.3d 846, 848 (7th Cir. 2017)) (emphasis in original). "'I was turned down for a job because of my race' is all a complaint has to say.'" *Id.* (quoting *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998)). Plaintiffs allege that they were treated differently and retaliated against after complaining about discrimination "based on their race." [13] ¶¶ 149, 161–164. This is sufficient to plead race discrimination and retaliation.

Defendants claim that the complaint only alleges religious discrimination and that not every instance of alleged discrimination based on someone's Jewish identity is a discrimination based on race. [20] at 4. But none of defendants' citations support their argument. First, *Lubavitch-Chabad of Ill., Inc. v. Nw. Univ.*, 6 F.Supp.3d 806 (N.D. Ill. 2013), is an opinion granting summary judgment—whether someone proves racial discrimination based on their Jewish identity does not mean that at the pleading stage, a plaintiff must make a prima facie case of racial discrimination.

*Bachman v. St. Monica's Congregation*, 902 F.2d 1259, 1260 (7th Cir. 1990), is an appeal from a jury verdict based on a jury instruction issue—again, whether the jury was properly instructed on racial discrimination does not say anything about

pleading standards for racial discrimination. Indeed, *Bachman* makes clear that antisemitism can be both religious and racial discrimination. *Id.* at 1260–61.

And the race discrimination claims in *Sampson v. Village Discount Outlet, Inc.*, 832 F.Supp. 1163, 1167 (N.D. Ill. 1993), were dismissed because the plaintiff had not been "denied, because of racial animus on the part of the defendants, the benefits of any laws or proceedings." The district court found that plaintiff had not been denied any right protected the statute. The district court then went further, finding that the plaintiff did not allege any specific acts, practices, or policies that supported his allegation that he was treated any differently than a white citizen because of his ethnicity. *Id.* But I am not bound by *Sampson*, and as more recently emphasized by the Court of Appeals for the Seventh Circuit, a plaintiff must plead *claims*, not *facts*. *Thomas*, 120 F.4th at 1337. It is enough for a plaintiff to allege that they were discriminated against because of their race. *Id.* Plaintiffs have done just that, and at the pleading stage, that is enough to proceed.

**B. Defendant James**

Defendants also move to dismiss defendant James because he is sued only in his official capacity.

If a public official violates a person's constitutional rights, the person can sue the public official in their individual capacity or in their official capacity. *Orr v. Shicker*, 147 F.4th 734, 739 (7th Cir. 2025). In an official-capacity suit, "the plaintiff alleges that the defendant was party to the execution or implementation of official policy or conduct by a government because the real party in interest is the entity." *Id.* (quoting *Hill v. Shelander*, 924 F.2d 1370, 1372 (7th Cir. 1991)). By contrast "an

individual capacity suit focuses on the constitutional torts of an individual officer." *Id.* (quoting *Hill*, 924 F.2d at 1372).

Plaintiffs sue James in his "official capacity" as the superintendent of Proviso. Plaintiffs allege that James acted under color of state law and that Proviso delegated final decision-making authority to James regarding teacher assignments. [13] ¶ 4. The conduct plaintiffs allege relates to James's authority to change classroom assignments. [13] ¶¶ 147, 150–52, 163–64, 168.

Official-capacity suits against municipal actors are treated as suits against the municipalities themselves. *Malhotra v. Univ. of Ill. at Urbana-Champaign*, 77 F.4th 532, 535 n.2 (7th Cir. 2023). "Because a suit against a government office and the officeholder are identical … the two defendants—the [superintendent] and [the school district]—are redundant on this claim." *Budd v. Motley*, 711 F.3d 840, 843–44 (7th Cir. 2013). Plaintiffs do not dispute that generally, officials sued in their official capacity are dismissed from a case as redundant. They argue, however, that James's "presence may be necessary to enforce injunctive relief." [22] at 6. But there is no injunctive relief that needs to be separately enforced against James that would not be addressed by an injunction against the district. I dismiss James as a defendant.

## IV. Conclusion

The defendant's motion to dismiss, [19], is granted in part and denied in part. James is dismissed as a defendant. Plaintiffs' race discrimination claims may proceed.

ENTER:

Manish S. Shah
United States District Judge

Date: August 13, 2026